51 CCPA

## Application of Gerald STENZLER. Patent Appeal No. 7186.

United States Court of Customs and Patent Appeals.

May 21, 1964.

Barnett & Barnett, New York City (Erwin M. Barnett, New York City, of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Fred W. Sherling, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

SMITH, Judge.

This is an appeal from a decision of the Board of Appeals which sustained the examiner's rejection of claims 13–15, 17–18, and 23–29 of appellant's patent application, Serial No. 783,522, filed December 29, 1958 for "Self Sizing Band Constructions." All of the appealed claims stand rejected as unpatentable over various combinations of prior patents. The legal issue is one of obviousness under 35 U.S.C. § 103.

The specification states, "This invention relates to jewelry and more particularly is directed to expansible band constructions for incorporation in finger rings, bracelets and the like-articles." However, all the appealed claims are directed specifically to a finger ring. The object of the invention is to provide a ring construction capable of expansion and contraction to fit a predetermined range of finger sizes.

Appellant's specification and drawings disclose a multitude of embodiments and the appealed claims define many variations of the basic idea. For simplicity, we reproduce below Fig. 7 of the drawings and claim 13 as representative. In the claim we have inserted in brackets

reference numerals corresponding to those used in Fig. 7.

FIG.7

"In a finger ring of the character described, a finger encircling sectionalized band comprising a sectional support member [31] connected at opposite ends thereof [31a] to a size adjustable portion, said portion including a pair of arcuate arms [34] each having one end thereof forming said sectional support connection [hinge 36] and having the other end [34a] free and radially movable from minimum to maximum adjustable size positions, means [spring 37] for normally resiliently urging said arcuate arms into said minimum size position, an arcuate shaped sleeve [35] having a bore telescopingly receiving through opposite ends thereof said arm free ends, said sectional support connection of each of said arms being located beyond said sleeve in all size positions, means [pins 35b, grooves 34d, and end walls 34e & 34f] coacting with said arms and sleeve for controlling and limiting the telescoping movement of the sleeve with respect to said arms and for centering the sleeve on the arms when the latter are in said minimum size position, and a bezel [32] for said ring carried by said sectional support member diametrically opposite said

sleeve, said sleeve being symmetrically movable with respect to said arms on application of radial pressure applied thereto to effect expanding of the size adjustable portion."

All twelve of the appealed claims appear to have in common at least five elements or limitations: 1) a support member; 2) a pair of arcuate arms; 3) a sleeve; 4) means for limiting and controlling movement of the arms; and 5) the requirement that the point of connection between the arms and the support member be outside the sleeve. However, proper resolution of the issues will require a somewhat more detailed consideration of the other limitations in each claim.

Claims 14 and 15 are dependent upon claim 13. Claim 14 specifically defines the resilient means as a "spring actuated hinge" (rather than the spring 37 which extends through the sleeve and connects the arms, as shown in Fig. 7). Claim 15 adds the further limitation that the "coacting" means be "a tongue means extending into said bore and engaging a groove formed in said arms."

Claim 23 is very similar to claim 13, except that the sectional support member is said to be "adapted to carry ornamentation normally visibly oriented on the back-hand surface of the finger of a wearer." Presumably this language defines a structure which would take the place of the bezel recited in claim 13. In addition, the resilient means is defined as a "spring actuated hinge means" (much like claim 14).

Claims 24, 25 and 26 are all dependent upon claim 23. Claim 24 specifies that the coacting means be a tongue and groove structure (like that in claim 15). Claim 25 also specifies a tongue and groove structure, but requires that tongue be "integrally formed at opposite ends of the sleeve as bent tab-like projections." Claim 26 defines another modification, in which the coacting means must include a "pin extending into said bore centrally of the sleeve for engaging said arm free ends."

Claim 27 is perhaps the broadest of those on appeal, in that it recites only the five elements or limitations which we have indicated are common to all the claims. It is more detailed only with respect to the definition of the coacting means, which is as follows:

" * * * said arms each having an elongated cut out portion located to terminate in a first wall adjacent said other arm end, said cut out portion extending longitudinally of said arm toward said first mentioned end and terminating in a second wall, a tongue means extending from opposite end portions of said sleeve into each of said cut out portions, the latter and said tongue means being constructed and arranged to center said sleeve with respect to the arms when the latter are in fully telescoped position by engagement of the tongue means with said second walls and to prevent separation of the parts when the arms are in fully extended position with the tongues in engagement with said first walls."

Claims 17 and 18 are dependent upon claim 27. Claim 17 requires that the tongue means be "integrally formed with said sleeve as tab-like projections" (much like claim 25). Claim 18 defines the tongue means as "pins extending through a wall of said sleeve" (similar to claim 26).

Claim 28 is very similar to claim 23, differing substantially only in that it does not recite *separate* resilient means. Instead of providing for a spring actuated hinge, as in claim 23, or for resilient means generally, as in claim 13, it specifies that the arcuate arms themselves have resilient properties and that they be rigidly connected to the support member and arranged so as to "normally resiliently urge said arms into said minimum ring size position."

Claim 29 defines a somewhat different embodiment than the others, in that the bezel is mounted on the sleeve. In other words, when the ring is worn in the normal position, the sectional support member is on the underside (palm side) of the finger.

The examiner relied on the following reference patents:

| | | | |
|---|---|---|---|
| Castiglioni | 842,625 | Jan. 29, 1907 | |
| Garst et al. | 1,550,024 | Aug. 18, 1925 | |
| Cibor | 1,641,575 | Sept. 6, 1927 | |
| Ritter | 2,457,275 | Dec. 28, 1948 | |
| Bender | 2,608,050 | Aug. 26, 1952 | |
| Walters (British patent) | 3,389 | Mar. 15, 1906 | |
| Matthews (British patent) | 18,619 | June 29, 1905 | |
| Pelissier (British patent) | 26,731 | Sept. 17, 1914 | |
| Bathilde (German patent) | 188,872 | Sept. 14, 1907 | |

All of the claims save claim 28 were rejected as unpatentable over various combinations of the above, always with Bathilde as a principal reference. In addition, all of the claims except claims 26 and 28 were rejected as unpatentable over Walters, with Pelissier cited where appropriate to show that spring-loaded hinges are the equivalent of hinged members pulled by a spring (as shown in Fig. 7, supra). Claim 28 was rejected as unpatentable over Matthews. The Board of Appeals sustained all these grounds of rejection.

Since it is our opinion that the Patent Office committed no reversible error in

the rejection based upon Walters and, where appropriate, Pelissier, it will not be necessary to consider the alternate grounds for rejection, except as to claims 26 and 28. With respect to claim 28, we agree with the examiner that it is unpatentable over Matthews. We also agree with the examiner's rejection of claim 26 as unpatentable over Bathilde in view of Bender and Ritter.

### Claims 13–15, 17–18, 23–25, 27 and 29

The Walters patent relates to "improvements in so-called expanding bracelets or bangles or like articles of jewelry of band form." Walters discloses an expansible band consisting of two tubes, a pair of arcuate arms, and an ornamental member, arranged in a circular configuration. The tubes are hinged together at the bottom of the circle and the arms fit telescopically into the opposite open ends of the tubes. The other ends of the arms are hinged to opposite sides of the ornamental member. Tension springs located within the tubes serve to pull the arms further into the tubes, thus continually urging the structure into its minimum size configuration. The arms are provided with longitudinal grooves which coact with pins fixed internally in the tubes to limit and control the telescoping motion of the arms with respect to the tubes.

It should be apparent from the foregoing description that Walters discloses a structure which embodies all the five main elements or limitations of the appealed claims save one. Thus, the tubes of Walters correspond to appellant's sleeve; the ornamental member corresponds to appellant's sectional support member; both Walters and the appealed claims call for a pair of arms; and Walters discloses means for limiting and controlling movement of the arms. The only limitation missing in Walters is that which requires that the point of connection of the arms to the support member be beyond the sleeve in all size positions. Appellant further argues that the tubes of Walters are not similar to appellant's sleeve, since they are hinged together at the bottom rather than being a one-piece construction. We think, however, that this difference is immaterial. It would be obvious to provide Walters with a one-piece tube rather than two tubes hinged together.

Turning then to the requirement that the point of connection between the arms and the support member be outside the sleeve, we agree with the examiner that it is obvious that the ends of the tubes in Walters could be cut off so as to expose the hinge connections, without in any way affecting the operation of the structure. Indeed, it would appear that the tubes in Walters are made long enough to cover the hinge connections only as a matter of choice in design, for the sake of appearance.

Pelissier was cited by the examiner as teaching the equivalency of spring-loaded hinges to the tension spring construction disclosed by Walters. Pelissier discloses an expansible, segmented finger ring, and specifically states, "Although the floating-segment has been described as being connected by means of tension springs to the pivoted ring-segments it is to be understood that such a construction is not essential to the invention." The specification further states that "the ring-segments might have their ends forced together by means of springs acting between parts of the said segments and of the body portion." In view of this teaching, we agree with the examiner that it would be obvious to use spring-loaded hinges in place of the tension spring disclosed in Walters.

With respect to the other limitations in the various claims: We think the pin and groove construction of Walters is the full equivalent of the tongue and groove construction specifically recited in claims 15, 24, 27. And the further limitation in claims 17 and 25 to the effect that the tongue be a tab-like projection formed integrally with the sleeve is of no patentable significance, since we think it would be obvious to bend down a portion of the sleeve to serve as the tongue, rather than providing a separate pin.

As for claim 18, which requires that the tongue be a pin "extending through a wall of said sleeve," Walters discloses pins and it would be but an obvious expedient to affix them by extending them through the sleeve wall.

Claim 29 adds to the structures previously discussed only the requirement that the bezel be carried by the sleeve. Placing the bezel there amounts to a mere change in position and does not affect the functioning of the ring in any way. We think the claimed ring is obvious regardless of whether the bezel is mounted on the sleeve or on the support member.

Appellant urges that Walters is ineffective as a reference since it deals with bracelets while appellant's claims are all directed to a ring. In this connection, we point out that Walters specifically states that it is concerned with "bracelets or bangles or like articles of jewelry of band form." This language would appear to include finger rings. At any rate, however, we think that a person engaged in devising an expansible ring would reasonably be expected to know about achievements in the expansible jewelry art generally.

We therefore affirm the rejection of claims 13–15, 17–18, 23–25, 27 and 29.

### Claim 28

As indicated above, claim 28 stands rejected as unpatentable over Matthews. Matthews shows a construction for a finger ring. The ring is made in two semi-circular, hollow portions which are attached or held to each other by means of a spring band. The spring band, which is arcuate in shape, is passed partially around the interior of the two hollow portions, so that the contracting force of the spring normally holds the two portions together, but permits expansion of the ring when it is pushed onto the finger. Located within the hollow portions are plates which coact with the turned-down ends of the spring band to limit movement of the parts.

Thus it is clear that Matthews meets all of the significant limitations of claim 28. In particular, the spring band (which may be in two pieces) is the full equivalent of the resilient arms called for in claim 28, except that the arms are not connected to opposite ends of the supporting member as required in claim 28. However, considering one of the two hollow portions as the supporting member, it would be but an obvious expedient to use a two-piece spring band and attach the spring ends to the ends of the hollow portion. Accordingly, we affirm the rejection of claim 28.

### Claim 26

Claim 26, as we have indicated, adds to claim 23 the same limitation which claim 18 adds to claim 27; namely, that part of the coacting means be a pin extending into the sleeve bore through a wall of the sleeve. Although the two claims, 18 and 26, employ somewhat different language, there is no significant difference between the structures defined therein. For this reason, it seems clear to us that a rejection based on Walters as the principal reference would have been as equally applicable to claim 26 as it was to claim 18. For some reason not apparent to us, the examiner failed to reject claim 26 as unpatentable over Walters, but relied instead on a combination of Bathilde, Bender and Ritter. To include herein a detailed discussion of Bathilde and Ritter would only further complicate an already involved factual situation. Suffice it to say that the combination of Bathilde and Ritter discloses substantially the same structural features as Walters. Bender shows that the use of a pin extending into a sleeve through the sleeve wall is old in the jewelry art. We therefore affirm the rejection of claim 26.

For the foregoing reasons, the decision of the board is affirmed with respect to all of the claims on appeal.

Affirmed.